No. 23-1547

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

JOHN SCOTT MORETTI

*Plaintiff – Appellant*

v.

DETECTIVE HELGA THORSDOTTIR

*Defendant-Appellee.*

_____

**On Appeal from the United States District Court
for the Eastern District of Virginia
(Case No. 1:23-cv-00020, Hon. Patricia Tolliver Giles)**

_____

**BRIEF OF APPELLANT**

Joshua Erlich (VSB No. 81298)
Katherine L. Herrmann (VSB No. 83203)
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd. Suite 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
         kherrmann@erlichlawoffice.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1547__      Caption: __John Scott Moretti v. Det. Helga Thorsdottir__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__John Scott Moretti__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO

2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)          ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _/s/ Katherine L. Herrmann_____          Date: _____June 5, 2023_____

Counsel for: _John Scott Moretti, Appellant_____

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ........................................................................................... 1

STATEMENT OF JURISDICTION ................................................................... 5

STATEMENT OF THE ISSUES ....................................................................... 5

STATEMENT OF THE CASE ........................................................................... 6

    I.    Factual Background .......................................................................... 6

    II.   Procedural History .......................................................................... 15

SUMMARY OF ARGUMENT ........................................................................ 15

STANDARD OF REVIEW .............................................................................. 16

ARGUMENT ................................................................................................ 17

    I.    THE DISTRICT COURT ERRED IN FINDING MR.
        MORETTI FAILED TO PLAUSIBLY ALLEGE DET.
        THORSDOTTIR LACKED PROBABLE CAUSE FOR HIS
        ARREST AND PROSECUTION ..................................................... 19

    II.    THE DISTRICT COURT ERRED IN FINDING MR.
        MORETTI FAILED TO PLAUSIBLY ALLEGE THAT
        DET. THORSDOTTIR OMITTED MATERIAL FACTS
        THAT SHE KNEW WOULD NEGATE PROBABLE
        CAUSE .................................................................................. 22

        A.    Det. Thorsdottir Omitted Known and Reasonably
            Discoverable Exculpatory Information ..................................... 23

        B.    The Information Omitted by Det. Thorsdottir Was
            Material .......................................................................... 28

    III.    THE DISTRICT COURT ERRED IN FINDING DET.
        THORSDOTTIR ENTITLED TO QUALIFIED IMMUNITY .......... 30

CONCLUSION ............................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................17

*BeVier v. Hucal*,
806 F.2d 123 (7th Cir. 1986) ............................................... 24, 31

*Clipper v. Tacoma Park*,
876 F.2d 17 (4th Cir. 1989) ............................................ 22, 30, 31

*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*,
213 F.3d 175 (4th Cir. 2000) .....................................................17

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) .....................................................16

*Graham v. Gagnon*,
831 F.3d 176 (E.D. Va. 2015) ............................................... 19, 20

*Ibarra v. United States*,
120 F.3d 472 (4th Cir. 1997) .....................................................17

*Khoraki v. Longoria*,
2023 WL 2603379 (E.D. Va. Mar. 22, 2023) ...............................30

*Malley v. Briggs*,
475 U.S. 335 (1986) ...................................................................19

*McKinney v. George*,
726 F.2d 1183 (7th Cir. 1984) ............................................. 21, 23

*Miller v. Prince George's Cnty., Md.*,
475 F.3d 621 (4th Cir. 2007) ........................................... 28, 30, 31

*Presely v. City of Charlottesville*,
464 F.3d 480 (4th Cir. 2006) .....................................................16

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ...................................................................17

*Sevigny v. Dicksey*,
   846 F.2d 953 (4th Cir. 1988) ............................................................. 23, 24, 30, 31

*Smith v. Munday*,
   848 F.3d 248 (4th Cir. 2017) ................................................................................20

*Torchinsky v. Siwinski*,
   942 F.2d 257 (4th Cir. 1991) ................................................................................21

*United States v. Doyle*,
   650 F.3d 460 (4th Cir. 2011) ................................................................................31

*United States v. Gray*,
   137 F.3d 765 (4th Cir. 1998) ................................................................................20

*Wadkins v. Arnold*,
   215 F.3d 535 (4th Cir. 2000) ................................................................................23

*Weidman v. Exxon Mobil Corp.*,
   776 F.3d 214 (4th Cir. 2015) ................................................................................16

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ......................................................................................................5

28 U.S.C. § 1294 ......................................................................................................5

28 U.S.C. § 1331 ......................................................................................................5

42 U.S.C. § 1983 .............................................................................................. 4, 5, 19

Fed. R. App. P. 4(a)(1)(A) .......................................................................................5

Fed. R. Civ. P. 12(b)(6) ..........................................................................................16

Va. Code § 18.2-370 .......................................................................................... 1, 12

Va. Code § 18.2-67.1 ...................................................................................... 1, 11, 12

Va. Code § 18.2-374.1:1 .........................................................................................10

# INTRODUCTION

Acting without probable cause, Detective Helga Thorsdottir of the Prince William County Police Department arrested and advocated for the continued prosecution of John Scott Moretti on the felony charges of forcible sodomy (Va. Code § 18.2-67.1) and taking indecent liberties with a child (Va. Code § 18.2-370).

The Prince William County Police Department (the "Department") first investigated allegations of sexual abuse of a minor (referred to herein as "Jane Doe" or "Doe") in June 2018. At that time, a detective looked into allegations that Jane Doe had been sexually abused by her father's friend after Doe disclosed abuse on a text-based hotline. During this initial investigation, Doe refused to name the perpetrator, providing only two relevant pieces of information: the perpetrator was (1) a friend of her father's who had recently moved back to the area and (2) was present inside her home at the time the hotline chat took place. The Department did not suspect Mr. Moretti at the time, and they had no reason to suspect him—he does not fit either of these descriptions. The Department moved the case to inactive status, and it remained inactive until September 16, 2019.

On September 16, 2019, following an online tip from a residential therapist who treated Doe, Det. Thorsdottir re-opened the investigation into Doe's alleged sexual abuse. Doe alleged that abuse took place five (5) to ten (10) years prior.

On September 25, 2019, Det. Thorsdottir interviewed Doe using transparently coercive tactics, including tactics such as questioning her for more than five hours despite Doe's emotionally fragile state. Det. Thorsdottir permitted Doe's therapist to be present for the interview, and her therapist frequently interjected and spoke on Doe's behalf. Doe's therapist grabbed Doe's hands during the interview, challenged the statements she made, stroked her hair, played the theme song from Rocky and referred to Doe as "Balboa," and reminded Doe her father would not let her leave the interview until she identified the perpetrator. It is under these coercive conditions and during this five-hour interview that Doe provided Mr. Moretti's name to Det. Thorsdottir.

Following Doe's identification of Mr. Moretti, Det. Thorsdottir's investigative efforts continued for approximately seven months before she sought a warrant for Mr. Moretti's arrest. Det. Thorsdottir engaged in substantial—if unfairly targeted—investigative efforts. She reviewed the file created by the previous detective, spoke to Doe's therapist, reviewed written statements Doe had made during residential therapy, interviewed her mother and father, interviewed Mr. Moretti, authorized surveillance on Mr. Moretti's home, executed a search warrant for Mr. Moretti's home and authorized a forensic examination of all electronics seized therefrom, and interviewed Mr. Moretti's two high school-aged children.

None of these efforts provided *any* corroborating evidence whatsoever to indicate that Mr. Moretti sexually abused Jane Doe. Instead, the information learned through Det. Thorsdottir's investigation called the reliability of Doe's identification into question and suggested an individual other than Mr. Moretti bore responsibility for the criminal actions Doe described.

On or about May 5, 2020, Det. Thorsdottir sought a warrant for Mr. Moretti's arrest. Det. Thorsdottir provided a criminal complaint to the magistrate in support of her request for a warrant, in which Det. Thorsdottir put forward only two facts in support of probable cause: (1) Jane Doe's identification of Mr. Moretti as the perpetrator; and (2) the recovery of a gun following the execution of a search warrant for Mr. Moretti's home, combined with Doe's allegation that a gun had been used in the commission of the offense charged.

Det. Thorsdottir omitted material information from her warrant application that she knew would negate a finding of probable cause. She did not reveal that Doe provided the Department identifying information about the perpetrator in 2018, or that the identifying information Doe provided did not apply to Mr. Moretti. Det. Thorsdottir did not disclose that Doe's identification of Mr. Moretti occurred more than a year after the initial investigation into Doe's allegations had been opened, and that Mr. Moretti did not match the description of the perpetrator initially provided to the Department by Doe.

Det. Thorsdottir did not include in her warrant application any of her investigative efforts beyond the execution of a search warrant for Mr. Moretti's home. She did not include the fact that the search had been conducted nearly six (6) months earlier, or that her additional, repeated attempts to corroborate Doe's identification of Mr. Moretti as the perpetrator of the abuse alleged had failed.

Det. Thorsdottir also omitted material, exculpatory information learned during her investigation, including the fact that Doe's parents maintained they had "zero" contact with Mr. Moretti, such that Mr. Moretti did not fit Jane Doe's identification of the perpetrator as her "father's friend."

Det. Thorsdottir relies on Mr. Moretti's ownership of a gun to support her application for a warrant but omitted that Mr. Moretti is a law enforcement officer, all but guaranteeing that a firearm would be present in his home. The warrant did not provide any details about the gun Doe described as having been used in the criminal offense at issue, nor did it provide details about the gun found during the execution of a search warrant for Mr. Moretti's home.

On February 23, 2023, Mr. Moretti filed an Amended Complaint claiming malicious prosecution in violation of 42 U.S.C. § 1983 ("Section 1983") in violation of his Fourth Amendment rights as well as malicious prosecution in violation of Virginia common law. The district court granted Det. Thorsdottir's

motion to dismiss the Amended Complaint on April 27, 2023, and Mr. Moretti now appeals this decision.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because the action asserted violations of constitutional rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). The district court entered final judgment on April 27, 2023.

Under Federal Rule of Appellate Procedure 4(a)(1)(A), Plaintiff-Appellant timely filed a Notice of Appeal on May 18, 2023 within 30 days after final judgment was entered. This Court has jurisdiction to consider Plaintiff-Appellant's appeal from the district court's final judgment under 28 U.S.C. § 1291 and 28 U.S.C. § 1294.

## STATEMENT OF THE ISSUES

1.     Whether the district court erred in finding Mr. Moretti failed to plead facts sufficient to plausibly allege that Det. Thorsdottir initiated legal process against him and continued to advocate for his prosecution absent probable cause to believe he committed the crimes with which he was charged, as required to state a claim for malicious prosecution under both Section 1983 and Virginia common law.

2.      Whether the district court erred in finding Mr. Moretti failed to plead facts sufficient to plausibly allege Det. Thorsdottir secured a warrant for Mr. Moretti's arrest absent probable cause through the reckless or deliberate omission of material, exculpatory information from the magistrate.

3.      Whether the district court erred in finding Mr. Moretti failed to plead facts sufficient to plausibly allege Det. Thorsdottir continued to support and act in furtherance of his prosecution, absent probable cause through the reckless or deliberate omission of material, exculpatory information from the Commonwealth Attorney's Office following Mr. Moretti's arrest.

4.      Whether the district court erred in finding Mr. Moretti failed to allege facts sufficient to demonstrate Det. Thorsdottir's actions constituted a clearly established violation of his Fourth Amendment rights and thereby erred in finding Det. Thorsdottir entitled to qualified immunity.

## STATEMENT OF THE CASE

### I.      Factual Background

On September 16, 2019, the Prince William County Police Department (the "Department") assigned Det. Thorsdottir to investigate an allegation of sexual abuse by a minor, Jane Doe, alleged to have occurred five (5) to ten (10) years earlier. JA 008 at ¶ 19. This constituted a re-opening of a prior case into Jane Doe's allegations, which had previously been brought to the Department's

attention in June 2018. JA 008 at ¶ 21. The Department initially placed Jane Doe's case in inactive status based on Jane Doe's refusal to identify the perpetrator. JA 008 at ¶ 21; JA 035-041.

The limited information Doe provided to the Department in 2018 included her identification of the perpetrator as (1) her father's friend; (2) who had moved away from the area when she was young and had recently moved back; and (3) who had recently been present in Jane Doe's home. JA 008-009 at ¶¶ 24-26; JA 035. Det. Thorsdottir reviewed the investigative file from June 2018, including a report which documented a prior detective's findings and conclusions. JA 008-009 at ¶¶ 23-31; JA 032-034; JA 035-041.

Det. Thorsdottir interviewed Doe at the police station on or about September 25, 2019 and agreed to allow Doe's therapist to be present throughout the interview. JA 010 at ¶ 32; JA 043. The interactions between Doe and her therapist were observably fraught, tense, and combative, and the interview lasted for five (5) hours. JA 010 at ¶¶ 33-34. Doe told her therapist that she is not withholding the name of the perpetrator out of fear or worry about any threat that person continues to pose to her. Doe's therapist refers to this statement by Doe as "bullshit" and asks if it is "genuine." JA 010 at ¶ 35.

Additional tactics used during Det. Thorsdottir's interview of Doe are transparently coercive. JA 010 at ¶ 36. Doe's therapist played the theme song to

"Rocky" and referred to Doe as "Balboa" to get her to disclose information about the perpetrator. JA 010 at ¶ 36(a). Doe's therapist reminded Doe that her father was waiting outside the interview room and would not allow Doe to leave until she disclosed who abused her as a child. JA 010 at ¶ 36(b). Doe eventually named Mr. Moretti as the perpetrator, however the coercive tactics used during this interview are documented in full by Dr. Leigh Hagan, Ph.D., an expert retained for Mr. Moretti's defense. JA 010 at ¶¶ 38-39; JA 089-111.

Det. Thorsdottir interviewed Doe's mother and father on September 30, 2019. JA 011 at ¶ 43; JA 048. Det. Thorsdottir did not inquire into the relationship between Doe's parents and Mr. Moretti during this interview, despite Doe having previously identified the perpetrator as her "father's friend." JA 011 at ¶ 44. Despite the absence of this line of questioning, Doe's father volunteered to Det. Thorsdottir that he and Doe's mother "never had any contact with [Mr. Moretti] . . . zero." JA 011 at ¶ 42.

On this same date, September 30, 2019, Det. Thorsdottir discussed Doe's interview, Doe's handwritten statements completed during treatment, as well as Doe's clinical records with Doe's therapist. JA 011 at ¶ 46; JA 048. During this discussion, Doe's therapist informed Det. Thorsdottir that Doe's description of incidences of sexual abuse during the interview were not consistent with Doe's recollection of those same incidents while in therapy. JA 012 at ¶ 47. Det.

Thorsdottir noted her discussion with Doe's therapist in a report dated October 31, 2019 and omitted any mention of the inconsistencies in Doe's allegations identified by her therapist. JA 012 at ¶¶ 49-50; JA 048.

Doe alleged the existence of pornographic pictures taken by Mr. Moretti. JA 013 at ¶ 56. Det. Thorsdottir's supervisor, First Sgt. Tyrell, submitted Doe's photograph to the National Center for Missing and Exploited Children ("NCMEC") to determine if any images of Doe were known to the organization, and no such images were found. JA 013 at ¶¶ 56-57.

In early October 2019, Det. Thorsdottir authorized the installation of surveillance equipment outside of Mr. Moretti's home to monitor his movements. JA 013 at ¶ 59. On or about October 4, 2019, Det. Thorsdottir sought the approval of First Sgt. Tyrell to secure two separate search warrants Det. Thorsdottir had drafted: one for Mr. Moretti's home and one for his person. JA 013 at ¶ 58; JA 065-071. On October 29, 2019, First Sgt. Tyrell informed Det. Thorsdottir that these search warrants could not be approved without corroboration of Doe's identification of Mr. Moretti as the perpetrator. JA 013 at ¶ 60; JA 053-054. First Sgt. Tyrell specifically noted the identifying information about the perpetrator provided by Doe in 2018 and the fact that it was inconsistent with her identification of Mr. Moretti. JA 014 at ¶ 62; JA 053-054.

First Sgt. Tyrell also noted the delayed nature of Doe's disclosure, the fact that she disclosed Mr. Moretti's name for the first time while in residential treatment, the coercive nature of Doe's interview, and the need for additional information and facts supporting Doe's allegations as issues that weighed against a finding of probable cause. JA 014 ¶ 63; JA 053-054.

Mr. Moretti consented to be interviewed by Det. Thorsdottir on November 11, 2019. JA 014 at ¶ 64. During this interview, Mr. Moretti adamantly denied having ever abused Doe. JA 014 at ¶¶ 65-66. Doe is approximately the same age as Mr. Moretti's daughter and the two individuals were friends. Mr. Moretti responded to Det. Thorsdottir's questions about Doe's visits to his home and provided he could not think of a time when he was ever left alone, or in the position of sole caregiver, of Doe and his daughter when Doe visited the residence. JA 015 at ¶ 70. Mr. Moretti told Det. Thorsdottir that his then-wife, Tamyra Moretti, was always present when Doe visited the residence. JA 015 at ¶ 71.

Det. Thorsdottir proceeded to swear out a warrant to search Mr. Moretti's home on the same date, November 11, 2019, at approximately 12:33 pm. JA 015-016 at ¶¶ 67, 74; JA 055-064. Her affidavit in support of the search warrant provided only Doe's identification of Mr. Moretti as the perpetrator as the basis of Det. Thorsdottir's individualized suspicion of Mr. Moretti for the criminal charges of "possession of child pornography" in violation of § 18.2-374.1:1 of the Virginia

Code and "forcible sodomy," in violation of § 18.2-67.1 of the Virginia Code. JA 015-016 at ¶¶ 68; JA 055-064.

Despite First Sgt. Tyrell having cautioned Det. Thorsdottir against swearing out search warrants in this case only two weeks earlier, Det. Thorsdottir nevertheless proceeded to swear out a warrant to search Mr. Moretti's residence—absent any additional information or facts to corroborate Doe's allegations. JA 013-014 at ¶¶ 60-63; JA 053-054.

Mr. Moretti cooperated by providing passcodes to the home, safes, electronic devices, and lockboxes to law enforcement officials who conducted the search. JA 016 at ¶ 76. Law enforcement seized three (3) cellphones; five (5) laptops; three (3) tablets; records, documents, SD cards; thumb drives, and a handgun from Mr. Moretti's residence. JA 016 at ¶ 77; JA 056. Neither the search of Mr. Moretti's home nor a forensic search of the electronics seized from his home led to the discovery of any information that corroborated Doe's allegations against Mr. Moretti. JA 016 at ¶¶ 78-79; 87-89.

Det. Thorsdottir interviewed both of Mr. Moretti's high school-aged children at their school on December 4, 2019. JA 016 at ¶ 80. Both of Mr. Moretti's children informed Det. Thorsdottir they could not recall a time in which Doe was present at their residence alone with Mr. Moretti. JA 016 at ¶ 81. These interviews

did not lead to the discovery of any information that corroborated Doe's allegations against Mr. Moretti. JA 017 at ¶¶ 82.

More than six months after the search of Mr. Moretti's home that led to the seizure of a firearm at his residence, on or about May 5, 2020, Det. Thorsdottir swore out an arrest warrant for Mr. Moretti and submitted a criminal complaint in support of her request. JA 018 at ¶ 90; JA 076-079. The arrest warrant provides probable cause existed to believe Mr. Moretti committed the criminal offenses of (1) forcible sodomy in violation of § 18.2-67.1 of the Virginia Code; and (2) indecent liberties in violation of § 18.2-370 the Virginia Code. JA 018 at ¶ 91.

Det. Thorsdottir presented only two facts to support probable cause for the arrest: (1) Doe's identification of Mr. Moretti as the individual who had abused her approximately five to ten years earlier; and (2) the fact that Doe had indicated that a gun had been used in the commission of the offense and "multiple firearms were observed" during the search of Mr. Moretti's home. JA 018 at ¶ 92; JA 078.

Execution of this warrant led to Mr. Moretti's arrest on May 5, 2020, and he remained in police custody until May 12, 2020 before being released on a fifty-thousand ($50,000.00) dollar bond. JA 021 at ¶¶ 94-95. A preliminary hearing was held on July 9, 2020. JA 021 at ¶ 96.

The Commonwealth Attorney's Office did not produce discovery to Mr. Moretti's defense counsel until eight (8) months following his arrest, or on January

29, 2021. JA 022 at ¶ 98. From this discovery, Mr. Moretti's defense counsel learned of Doe's inconsistent identification of the perpetrator as her "father's friend" in 2018. JA 022 at ¶ 98; JA 035-041. Defense counsel also learned that additional information about this identification existed and requested this information in discovery. JA 022 at ¶ 99. The Commonwealth Attorney's Office did not produce any additional documents but represented to the court on March 12, 2021 that all evidence had been provided to the defense. JA 022 at ¶ 100.

Repeated failures to produce discovery led to Mr. Moretti's trial being continued from April 12, 2021 until January 2022. JA 022 at ¶ 100. On May 28, 2021, Assistant Commonwealth Attorney Elena Lowe ("ACA Lowe") produced a copy of a Child Protective Services ("CPS") Report to Mr. Moretti's defense counsel and indicated she had just received it from Det. Thorsdottir. JA 023 at ¶ 105. The CPS report contained (1) additional detail in support of Doe's assertion that the perpetrator had been her father's friend; and (2) referred to an available transcript of the online chat in which Doe made this disclosure in June 2018. JA 023 at ¶ 106.

Mr. Moretti's defense counsel and the Commonwealth Attorney's Office received a copy of the online chat transcript and reviewed it for the first time on December 21, 2021. JA 023 at ¶ 108. Detail from the online chat transcript confirmed that Jane Doe had identified an individual as an abuser who had been

her father's best friend from high school, who served as best man at her parents' wedding, moved away and back to the area in July 2018 and attended a wedding reception at which Doe was present with her family in 2015. JA 024 at ¶ 111.

Mr. Moretti was not friends with Doe's father, did not attend their wedding or any wedding where they were present, and had lived in the same area for more than a decade. ACA Lowe moved to *nolle prosequi* the case against Mr. Moretti on January 4, 2022. On that same date, she provided a letter to the court in which she provided, in relevant part:

> Pursuant to Rule 3.3 of the Professional Guidelines of the Virginia State Bar regarding candor toward the tribunal, I have been made aware of the falsity of an argument that I made during the motions regarding the victims [sic] medical records in the John Scott Moretti case. I previously believed that in 2018, the victim had not named another individual as her abuser for the pending charges, besides John Moretti, and argued as such.
>
> Defense counsel requested a Subpoena Duces Tecum which I signed an agreed order for, to obtain online chat messages from a suicide hotline. These messages clearly show the victim naming another individual besides the defendant as her abuser in detail in June of 2018. I did not have these messages nor was I aware of the detailed contents at the time of my argument. I felt I should correct the record as an officer of the Court.

JA 024 at ¶ 110; JA 088.

Det. Thorsdottir withheld the CPS report and the exculpatory information it contained—including express reference to additional exculpatory evidence

available to her—from both the magistrate in swearing out a warrant for Mr. Moretti's arrest as well as ACA Lowe, the attorney assigned to Mr. Moretti's prosecution. JA 024-025 at ¶ 113. Once disclosed, this information caused ACA Lowe to *nolle pros* the criminal charges against Mr. Moretti almost immediately. JA 024-025 at ¶ 113.

## II.    Procedural History

Mr. Moretti initiated this action against Det. Thorsdottir in state court before its removal to the United States District Court for the Eastern District of Virginia, Alexandria Division, on January 6, 2023. JA 002. He Amended his Complaint on February 23, 2023.

Det. Thorsdottir filed a motion to dismiss Mr. Moretti's Amended Complaint on March 9, 2023. JA 003, JA 112-128. The district court granted Det. Thorsdottir's motion to dismiss at a hearing on April 27, 2023 but did not issue a written opinion. JA 003, JA 161-187. Mr. Moretti appeals that final order. JA 003, JA 159-160.

## SUMMARY OF ARGUMENT

The district court erred in finding Mr. Moretti did not plausibly plead facts sufficient to demonstrate Det. Thorsdottir lacked probable cause to initiate his prosecution for the criminal charges at issue, as required to state his claims of malicious prosecution under both Section 1983 and Virginia common law. The

district court further erred in finding Det. Thorsdottir entitled to qualified immunity, as Mr. Moretti's Amended Complaint plausibly alleged Det. Thorsdottir having obtained a warrant for Mr. Moretti's arrest without probable cause by the deliberate or reckless omission of material facts she knew would negate probable cause, and, following his arrest, continued to withhold this same material information from the Commonwealth Attorney's Office.

This Court should vacate the district court's grant of Det. Thorsdottir's Motion to Dismiss Mr. Moretti's Amended Complaint and remand to the district court for the case to proceed to discovery.

## STANDARD OF REVIEW

A district court's grant of a motion to dismiss for failure to state a claim is reviewed *de novo*. *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015). Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claims, or the applicability of defenses." *Presely v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Instead, upon a motion to dismiss, a court assumes the truth of all facts alleged in the complaint and must construe the facts and reasonable inferences derived therefrom

in the light most favorable to the plaintiff. *See Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

A complaint must contain factual information to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To achieve facial plausibility, a complaint should contain sufficient factual allegations to support a reasonable inference that a defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint can withstand a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

## ARGUMENT

Det. Thorsdottir's submission of a misleading warrant application to a magistrate led to the arrest of Mr. Moretti without probable cause. The law is well-established that an officer is responsible for both the information provided to a magistrate *and* material omissions that would change the magistrate's probable cause determination. Det. Thorsdottir excluded material, exculpatory and inconsistent evidence she gathered with respect to Mr. Moretti that she knew would negate probable cause, and in so doing violated Mr. Moretti's clearly established rights.

A full view of the evidence known or reasonably available to Det. Thorsdottir at the time of her application for a warrant for Mr. Moretti's arrest did not support probable cause to believe Mr. Moretti committed the criminal offenses charged. Similarly, Mr. Moretti alleged that had Det. Thorsdottir provided the Commonwealth Attorney's Office with an accurate and complete picture of the evidence already within her possession or known by her to be reasonably discoverable, the Commonwealth Attorney's Office would not have moved forward with Mr. Moretti's prosecution.

The absence of probable cause is a necessary element to Mr. Moretti's claim against Det. Thorsdottir for the violation of his constitutional rights under the Fourth Amendment, as well as his claim of malicious prosecution under Virginia common law. The district court erred in its dismissal of both claims based on a finding that Mr. Moretti's Amended Complaint failed to plausibly allege that Det. Thorsdottir lacked probable cause to support his arrest and prosecution.

The district court further erred in finding Det. Thorsdottir entitled to qualified immunity with respect to Mr. Moretti's Fourth Amendment claim. Det. Thorsdottir's actions, as set forth in Mr. Moretti's Amended Complaint, are sufficient to plausibly allege that Det. Thorsdottir recklessly omitted material information from both the magistrate and the Commonwealth Attorney's Office in

a manner that constitutes a clearly established violation of Mr. Moretti's constitutional rights.

For these reasons, the district court erred in its dismissal of both Mr. Moretti's Section 1983 malicious prosecution claim and claim of malicious prosecution in violation of Virginia common law against Det. Thorsdottir and Mr. Moretti should be permitted to proceed to discovery on both claims.

## I. THE DISTRICT COURT ERRED IN FINDING MR. MORETTI FAILED TO PLAUSIBLY ALLEGE DET. THORSDOTTIR LACKED PROBABLE CAUSE FOR HIS ARREST AND PROSECUTION.

The facts pled by Mr. Moretti plausibly allege Det. Thorsdottir's reliance on information objectively insufficient to establish that probable cause existed for his arrest on the felony charges of forcible sodomy and indecent liberties. Mr. Moretti attached to his Amended Complaint a copy of the criminal complaint Det. Thorsdottir submitted in support of the warrant for his arrest and provided factual support for his allegations as to its constitutional deficiency.

 "A warrant will not preclude a civil suit when it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Graham v. Gagnon*, 831 F.3d 176, 183 (E.D. Va. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Det. Thorsdottir provided in her warrant application that probable cause existed based on two facts alone: (1) that Jane Doe named Mr. Moretti as the perpetrator during an interview conducted by Det. Thorsdottir; and

(2) that a firearm was found in Mr. Moretti's residence during the execution of a search warrant. JA 018 at ¶ 92; JA 078.

"When determining whether an officer had probable cause when applying for an arrest warrant, "[a] court should only consider the information the officers had at the time they sought the warrant." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017). The probable cause inquiry then consists of two factors: "(1) the suspect's conduct as known to the officer" and (2) the contours of the offense thought to be committed by the conduct." *Id.*

"Because probable cause is an objective test, we examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause." *Graham*, 831 F.3d at 185 (citing *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (collecting cases).

As alleged by Mr. Moretti, Det. Thorsdottir engaged in substantial investigative efforts prior to seeking a warrant for Mr. Moretti's arrest in May 2020. The information in her possession was not limited, but rather the result of seven months of investigation. Her decision to seek a warrant against Mr. Moretti was not made in haste, nor did she face an exigency or threat which limited the information she could learn or provide to the magistrate.

Mr. Moretti plausibly alleged that, despite this lengthy investigation, Det. Thorsdottir based her probable cause determination on two facts alone with knowledge that a full examination of the evidence would not give rise to a reasonable belief that a warrant should issue for his arrest. The discovery of a firearm in Mr. Moretti's home did not make it more of less likely that he committed the criminal offenses alleged. Mr. Moretti is a law enforcement officer, and, even if he was not, approximately 44.6 percent of all Virginia residents own a firearm.[1] Firearm ownership does not support individualized suspicion of Mr. Moretti. This leaves Doe's identification of Mr. Moretti as the sole basis for Det. Thorsdottir's probable cause determination—an identification provided during a marathon, transparently coercive interrogation.

A victim's identification of a suspect as the perpetrator of a criminal offense must be reliable to be deemed sufficient on its own to give rise to probable cause. *See Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) (citing *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984)). Here, Doe's identification of Mr. Moretti did not fit the facts known to Det. Thorsdottir at the time she swore out a warrant for Mr. Moretti's arrest, and a reasonable officer would have determined this undermined the reliability of Doe's identification of Mr. Moretti absent

---

[1] Based on average gun ownership statistics from 1980-2016. *See* RAND Corporation, "State-Level Estimates of Household Firearm Ownership," available at www.rand.org/content/dam/rand/pubs/tools/TL300/TL354/RAND_TL354.pdf.

additional corroborating evidence. *See*, *e.g.*, *Clipper v. Tacoma Park*, 876 F.2d 17 (4th Cir. 1989) (providing an officer cannot ignore readily available exculpatory evidence of which he has been made aware).

Mr. Moretti has plausibly alleged that the limited facts Det. Thorsdottir provided to the magistrate were an incomplete recitation of material facts known to negate probable cause for Mr. Moretti's arrest, as discussed further in Section II, *infra*. Mr. Moretti's Amended Complaint plausibly alleged that an honest and complete recitation of the material facts known by Det. Thorsdottir and those reasonably discoverable by her would not have resulted in the issuance of a warrant or his continued prosecution.

Taking the facts pled in the Amended Complaint as true and construing all reasonable inferences in Mr. Moretti's favor, the district court erred in finding Mr. Moretti failed to plausibly allege that Det. Thorsdottir swore out a warrant for his arrest without probable cause to believe he committed the criminal offenses charged.

## II.     THE DISTRICT COURT ERRED IN FINDING MR. MORETTI FAILED TO PLAUSIBLY ALLEGE THAT DET. THORSDOTTIR OMITTED MATERIAL FACTS THAT SHE KNEW WOULD NEGATE PROBABLE CAUSE.

The information Det. Thorsdottir failed to disclose in her warrant application, as alleged by Mr. Moretti, weighed directly on the reliability of Doe's identification of Mr. Moretti as the perpetrator of the crimes charged, rendering the

withholding of this information a material omission. Det. Thorsdottir purposefully omitted this material, exculpatory information when she swore out a warrant for Mr. Moretti's arrest and subsequently failed to inform the Commonwealth Attorney's Office of this exculpatory information in the months that followed.

Absent Det. Thorsdottir's omission of facts material to the probable cause determination, no warrant for Mr. Moretti's arrest would have issued. Further, Mr. Moretti plausibly alleged that the Commonwealth Attorney's Office would not have deemed the evidence against Mr. Moretti sufficient to proceed with his prosecution following his arrest had it not been for Det. Thorsdottir's deliberate withholding of exculpatory information and documents that were either already within Det. Thorsdottir's possession or that she knew to exist.

### A. Det. Thorsdottir Omitted Known and Reasonably Discoverable Exculpatory Information.

The district court relied on the case of *Wadkins v. Arnold* to find Det. Thorsdottir was not required to "exhaust potentially exculpatory leads or resolve every doubt about a suspect's guilt before probable cause is established." JA 184 (citing *Wadkins v. Arnold*, 215 F.3d 535, 541 (4th Cir. 2000). However, *Wadkins* further holds that officers are not shielded from liability if they "lied to or misled the prosecutor," or "failed to disclose exculpatory evidence." *Id.*

"Law enforcement officers are "held to knowledge of reasonably discoverable information bearing upon probable cause." *Sevigny v. Dicksey*, 846

F.2d 953, 957 n.5 (4th Cir. 1988) (citing *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)). Where, as here, a question integral to a probable cause determination remains, a "police officer acting reasonably under the circumstances [must] clarify the factual situation," *Sevigny*, 846 F.2d at 958 and "may not close her or his eyes to facts that would help clarify the circumstances of an arrest." *BeVier*, 806 F.2d at 127 (citation omitted).

The district court failed to adequately consider the facts pled by Mr. Moretti which allege that Det. Thorsdottir omitted information already known to her at the time she swore out the warrant for Mr. Moretti's arrest. This information required no additional investigation by Det. Thorsdottir to ascertain and included the fact that Doe had provided identifying information about the perpetrator that Det. Thorsdottir knew did not apply to Mr. Moretti nearly two years prior to the date of the warrant.

The district court further erred in finding the specific documents containing exculpatory information that Det. Thorsdottir knew to exist but did not disclose constituted an "exculpatory lead" she was not required to exhaust. As alleged in Mr. Moretti's Amended Complaint, specific documents containing exculpatory information were known to Det. Thorsdottir and reasonably discoverable by her. These included the CPS report noted in the investigative file from 2018 as well as

the transcript of the online chat from which Doe's initial allegations of sexual abuse arose.

The information and documents known or reasonably discoverable to Det. Thorsdottir that she withheld following Mr. Moretti's arrest on May 5, 2020 include the following:

- The contents of the investigative file from June 2018, provided to Det. Thorsdottir in September 2019. JA 008 ¶¶ 23-31; JA 032-034. ACA Lowe could not produce this file in discovery until January 29, 2021, more than eight months after Mr. Moretti's arrest, supporting a reasonable inference that Det. Thorsdottir failed to provide these documents to the Commonwealth Attorney's Office at any time prior. JA 022 at ¶ 98.

- A CPS report noted within the investigative file from June 2018. Det. Thorsdottir either had a copy of this document within her possession or knew it to be reasonably discoverable as of September 2019. JA 008 ¶¶ 23-31; JA 032-034. The Commonwealth Attorney's Office could not produce this document in discovery until May 28, 2021, when ACA Lowe indicated she had just received it from Det. Thorsdottir. JA 023 at ¶ 105.

- A transcript of the online chat giving rise to the opening of an investigation into Doe's allegations of sexual abuse in June 2018, described in the CPS report. JA 023 at ¶ 106. Det. Thorsdottir either had a copy of this document

within her possession or knew it to be reasonably discoverable as of September 2019. JA 008 ¶¶ 23-31; JA 032-034. The Commonwealth Attorney's Office could not produce this document. Defense counsel for Mr. Moretti obtained it in response to a subpoena duces tecum and reviewed it for the first time on December 21, 2021. JA 023 at ¶ 108.

The facts known, and those reasonably discoverable to Det. Thorsdottir that she withheld at the time she swore out a warrant for Mr. Moretti's arrest on May 5, 2020 were:

- Doe's provision of identifying information about the perpetrator that could not refer to Mr. Moretti contained in the June 2018 investigative file. JA 024 at ¶ 111. Information Mr. Moretti alleged to have been known by Det. Thorsdottir based on her review of the June 2018 investigative file in September 2019 included Doe's identification of the perpetrator as her "father's friend" who moved away following the criminal offenses alleged but had recently moved back to the area, and who was present at her home in June 2018. JA 008-009 at ¶¶ 23-26.

- Doe's provision of additional identifying information about the perpetrator that did not apply to Mr. Moretti, contained in an online chat transcript referenced in a CPS report alleged to have been reviewed by Det. Thorsdottir in September 2019 and either known to, or reasonably

discoverable by, Det. Thorsdottir. JA 023-24; ¶¶ 105, 106 and 111. This information included Doe's identification of the perpetrator as having been her father's best friend from high school who served as the best man in her parents' wedding and who was present at a separate wedding reception attended by Doe and her family in 2015. JA 024 at ¶ 111.

- The circumstances of the interview in which Doe identified Mr. Moretti as the perpetrator. JA 010 at ¶¶ 32-39; JA 089-111.

- The fact that the interview of Doe's parents, Mr. Moretti, and Mr. Moretti's children failed to produce evidence that corroborated Doe's identification. JA 014-015 ¶¶ 64-71.

- The fact that the search of Mr. Moretti's home that resulted in discovery of a firearm had been conducted pursuant to a charge of possession of child pornography that arose based on information provided by Doe, and that the search of his home and forensic examination of the electronics seized resulted in no evidence to corroborate this allegation. JA 015 at ¶¶ 67-89; JA 055-064.

- The fact that Mr. Moretti's home had been under surveillance by law enforcement since October 2019 and this surveillance had not resulted in any evidence to corroborate the criminal charges against him. JA 013 at ¶ 59; JA 049, JA 051-052.

- The fact that Doe's therapist informed Det. Thorsdottir that the incidents of abuse described by Doe during her residential treatment were inconsistent with the incidents Doe described during the interview in which she identified Mr. Moretti as the perpetrator. JA 012 at ¶¶ 47-50.

Mr. Moretti's Amended Complaint plausibly alleges exculpatory information omitted by Det. Thorsdottir that was known or reasonably discoverable at the time she swore out a warrant for Mr. Moretti's arrest, as well as exculpatory information omitted by Det. Thorsdottir in her provision of information to the Commonwealth Attorney's Office in support of Mr. Moretti's prosecution.

**B.      The Information Omitted by Det. Thorsdottir Was Material.**

The information omitted by Det. Thorsdottir was material to the magistrate's probable cause determination, as it undercut the reliability of the single basis Det. Thorsdottir relied upon to establish probable cause: Jane Doe's identification of Mr. Moretti as the perpetrator. "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause.'" *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 628 (4th Cir. 2007) (citations omitted)).

The information Det. Thorsdottir withheld was material to the magistrate's determination that probable cause existed to arrest Mr. Moretti and material to the Commonwealth Attorney's Office's decision to proceed with Mr. Moretti's prosecution following his arrest. In further support of this fact, Det. Thorsdottir had previously been cautioned by her supervisor about reliance upon Doe's identification without additional corroborating evidence, but she proceeded to swear out a warrant for Mr. Moretti's arrest based on Doe's identification alone. JA 013-14 at ¶¶ 60-63.

The information omitted by Det. Thorsdottir was also material to the Commonwealth Attorney's determination to proceed with Mr. Moretti's prosecution until January 2022. This fact is support by Mr. Moretti's allegations that, upon ACA Lowe's eventual receipt of information known to Det. Thorsdottir that called Doe's identification into question, ACA Lowe almost immediately decided to *nolle pros* the criminal charges against him. JA ¶ 024 at ¶ 110. On the same date ACA Lowe *nolle prossed* these charges, she issued a letter to the court that provided, in relevant part:

> These messages clearly show the victim naming another individual besides the defendant as her abuser in detail in June of 2018. I did not have these messages nor was I aware of the detailed contents at the time of my argument. I felt I should correct the record as an officer of the Court.

JA 024 at ¶ 110; JA 088.

Mr. Moretti's Amended Complaint plausibly alleges that Det. Thorsdottir omitted material, exculpatory information known to her or readily available to her at the time she swore out a warrant for Mr. Moretti's arrest and at the time she provided evidence in support of his prosecution to the Commonwealth Attorney's Office.

## III. THE DISTRICT COURT ERRED IN FINDING DET. THORSDOTTIR ENTITLED TO QUALIFIED IMMUNITY.

Det. Thorsdottir's actions, as plausibly alleged in Mr. Moretti's Amended Complaint, constitute a violation of Mr. Moretti's clearly established constitutional rights and the district court erred in finding Det. Thorsdottir entitled to qualified immunity. Mr. Moretti plausibly alleged Det. Thorsdottir having either deliberately or recklessly omitted material facts from both the magistrate and Commonwealth Attorneys' Office to secure Mr. Moretti's arrest and prosecution, as set forth in Section II, *supra*.

It is clearly established that an officer's arrest of an individual when further investigation is needed, *i.e.*, when the totality of circumstances known to that officer do not definitively show probable cause, constitutes a violation of that individual's constitutional rights. *See Khoraki v. Longoria*, 2023 WL 2603379, *11 (E.D. Va. Mar. 22, 2023) (providing "it is clearly established by *Miller*, *Sevigny*, *Clipper*, and *BeVier* that [an officer] could not omit material facts to the magistrate when [she] obtained warrants and . . . needed to do further investigation when the

totality of circumstances did not definitively show probable cause") (citing *Miller*, 475 F.3d at 621; *Sevigny*, 846 F.2d 953; *Clipper*, 876 F.2d 17; and *BeVier*, 806 F.3d at 128).

"[W]here a reasonable officer would know that a probable cause determination could not be rendered without information conspicuously absent from his application for a warrant, reliance on the resulting warrant is not objectively reasonable." *United States v. Doyle*, 650 F.3d 460, 476 (4th Cir. 2011).

The facts pled in Mr. Moretti's Amended Complaint plausibly allege Det. Thorsdottir's omission of material, exculpatory facts from both the magistrate and the Commonwealth Attorney's Office resulted in Mr. Moretti's arrest and prosecution absent probable cause. The specific actions of Det. Thorsdottir alleged by Mr. Moretti constitute a clearly established violation of his rights under the Fourth Amendment, and the district court erred in finding Det. Thorsdottir entitled to qualified immunity. Mr. Moretti should be permitted to proceed to discovery on his claim of malicious prosecution pursuant to Section 1983 against Det. Thorsdottir.

## **CONCLUSION**

For the foregoing reasons, Mr. Moretti respectfully requests this Court reverse the district court's judgment dismissing his claims against Det. Thorsdottir and remand this case to proceed to discovery on all issues so triable.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a)(1), Mr. Moretti requests oral argument in this case.

Respectfully Submitted,

*/s/ Katherine L. Herrmann*

Joshua Erlich (VSB No. 81298)
Katherine L. Herrmann (VSB No. 83203)
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd. Suite 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
        kherrmann@erlichlawoffice.com

## CERTIFICATE OF COMPLIANCE

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[X] this brief or other document contains 7,096 words

[ ] this brief uses monospaced type and contains [state number of] lines

This brief or other document complies with the typeface and type style requirements because:

[X] this brief or other document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font; or

[ ] this brief or other document has been prepared in monospaced typeface using [identify word processing program] in [identify font size and type style].

/s/ *Katherine L. Herrmann*
Katherine L. Herrmann

Party Name: Plaintiff-Appellant John Scott Moretti

Dated: August 8, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ *Katherine L. Herrmann*
Katherine L. Herrmann

*Counsel for Plaintiff-Appellant*